Good morning. You'll notice that our third panel member is not here this morning. Justice Hudson has a family funeral today and he is familiar with the record. He's read the briefs. He will listen to the oral argument and then we will have conference and issue a decision. Ms. Aldridge, proceed. Ms. Aldridge Good morning and may it please the court. My name is Jacqueline Aldridge and I represent the appellant Elena Martinez. Her appeal presents three issues for your honors. The first and most compelling issue is the trial court's error in denying her motion in limine to admit into evidence Donald Armarante's prior felony conviction for aggravated battery. What's our standard overview with regard to the trial court's ruling on a motion in limine? For evidentiary rulings, which this motion in limine entails, in general, and obviously there's been a dispute between the state and myself as to the proper standard of review, generally evidentiary rulings are reviewed for an abuse of discretion. It is our position that given this type of evidentiary ruling, it would be a de novo review. The reason for that, not only People v. Lynch, which is an Illinois Supreme Court case, sets forth, one, does not take place in a probative versus prejudicial value analysis, but sets forth that the only issue presented before the court with People v. Lynch when it is properly presented is the legal issue of whether the convictions were admissible. Doesn't the court in Lynch discuss reliable evidence? Sure, Judge. Is it inherent in reliability and examination of the relevance versus probative value? Reliability is a factor in an evidentiary ruling. However, the purpose for discretionary review of evidentiary rulings is when there is a factual dispute as to the evidence being offered, whether there's a reliability concern, and this was expressed in People v. Risper, or where there's a credibility of witnesses are at issue. What we're dealing with in this case is very simply a prior conviction. So we don't have a reliability concern because it's a prior conviction. It's an adjudication. What was the good faith basis for introducing the aggravated battery conviction? Was there a certified copy of the conviction? The record was not clear of how the defendant was going to present that conviction. Unfortunately, there was extensive argument by counsels in the trial court that the defendant was very much intending to limit the evidence, that all they wanted to present was the conviction and no testimony regarding the underlying facts, which is why we establish or would argue that it is a de novo review. But I do not know whether or not they had a certified copy of the conviction or not. And defense counsel did not know exactly what the details were of that prior, correct? It did not appear that they did. It happened when the defendant, or when the victim in this case, Mr. Amorati, was 19 years old. I believe. I know it was 55 years prior to this trial, and that was the major concern. So you don't have, there's no indication of certified captive conviction. He was 19, he's now 74, and there's no information regarding any of the details. Correct, Your Honor. And so part of that, part of that, and Your Honor has touched upon it, the 55-year-old age of that conviction was really the only reason that appeared in the record on why the trial court denied the motion in limiting and did not allow the evidence. Could this ag battery have been spitting in the face of a police officer? Well, I don't believe so. As I did look up, and I don't have the aggravated battery statute from 55 years ago, but in looking at what an aggravated battery entails today, examples of aggravated battery, they all are premised upon the causing of great bodily harm, permanent disability or disfigurement. Other examples are use of a firearm, strangulation. So I don't believe that spitting in the face would have been considered an aggravated battery. I believe any battery on a police officer is an aggravated battery, and possibly also an EMT or a fireman. And I also believe that there's a battery for disabled people and for people over the age of 65. Your Honor is correct. There are aggravated batteries even now in the statute based on who is being targeted. And that is one reason as well. Your Honor is correct. I also think that it might be an aggravated battery if it's committed on a public way. The statute indicates that now as well. So part of our purpose is that these are all arguments that could have been made that the jury was entitled, the defendant was entitled to present her case, and the jury could have weighed that, they would have been in tune to the fact that this was a 55-year-old conviction, that the alleged victim had no prior criminal history, and they could have weighed that just like they weighed every other fact that was presented to them at trial. And to deny the defendant the right to even present that was error in denying her the right to present her case. We have under People v. Lynch, which is also set forth in the Illinois Federal, excuse me, the Illinois Rules of Evidence 40482, and I believe it also is in 405, that we have a case where, again, the decision on the motion in the meeting did not have your normal evidentiary factors of credibility issues, reliability, or credibility of disputed facts. No, the state was not disputing. As your Honor asked about certified conviction, there was no dispute by the state that this conviction existed. That was from Cook County in Illinois, so we're not dealing with any kind of different battery definition than we would be today or in DuPage County. And Lynch provides, the Illinois Supreme Court, that this evidence is highly probative. And that's one of the problems alleged in our appeal, is that the trial court found it to have basically no probative value because of the age. And that seemed to be, even if your Honor found that there should be probative versus prejudice analysis under 403, which we submit that that's not qualified in Lynch or in 404, but even if there were to be this analysis, the trial court stopped there. This 55-year-old conviction had no probative value. When Lynch says, without any time constraint, that prior convictions for violent offenses such as battery, and in this case an aggravated battery at a felony level, is probative. It's highly probative of the issue of... Is it probative or impeaching? It's probative. It's probative, and Lynch provides that it is circumstantial evidence as to the issue of who was the initial aggressor. And that's why Ms. Martinez was offering the evidence. Lynch provides for two purposes, the first of which does not apply, which is if the defendant has knowledge of this violent character, then the court can utilize that in weighing, or the fact finder, in weighing whether or not her actions and beliefs were reasonable in acting in self-defense. That does not apply here. But the second purpose, which does not require any knowledge of this at the time, is when there's conflicting and incomplete accounts of what happened, to assist and corroborate her story, her version of what happened. That's what she was asking to do. And I believe... It's your position that the mere exiting of her vehicle to go and... She used the term confront when she spoke to the officer, but her testimony was that she went to speak with him to see whether or not he would move his car so she could then park there. Correct. And so your argument is that that is not... She could not be characterized as the initial aggressor just based on that. That is my position, not in terms of any physical altercation. It appears that's what the trial court found. Well, the jury found, and then the trial court reaffirmed it at sentencing hearing. And I think that's very telling. At the sentencing, the trial court said, and I quoted it in my brief, there's clearly a dispute, the trial court says at sentencing, as to who was the initial aggressor in terms of the physical altercation. But I believe the analysis stopped at she got out of her car and that was it. She had no right to defend herself physically, even if Mr. Amarante came after her physically. We don't know how that transpired. We know she got out of her vehicle to talk to him. That's as much as we know. That's as much as is consistent between the defendant and Mr. Amarante. Anything thereafter has been conflicting. And, in fact, Mr. Amarante's testimony was not only lack of credibility in certain aspects, but was impeached by other witnesses, including his wife, including the officer. There's no dispute that none of the other witnesses saw how this started. Now we're getting to the sufficiency of the evidence. Yes. So why don't you turn to that. You're familiar with the Collins Handbook of Review, correct? Yes. Tell us how we could possibly find the evidence was insufficient to convict. The evidence was insufficient to convict because, in this case, you have basically one witness, other than the defendant, who saw how this transpired, this beginning. This beginning is what lends itself to the self-defense claim. And when a self-defense is claimed, it is the state's burden to prove that this was not an act in self-defense. So the burden remains on the state. That confrontation, that initial confrontation, was not proved beyond a reasonable doubt. The fact that she was not acting in self-defense was not proved beyond a reasonable doubt. Mr. Amarante's testimony, the only person who testified that she was the initial aggressor, had many inconsistencies. And several parts of his testimony were just unbelievable. I mean, he testified, and this was very clear from, if you look at Exhibit 2, he testified that she pulled out a pen from his T-shirt pocket and stabbed him in the head, in the forehead, during this altercation. There were photographs of an injury on his forehead. Of an injury on his forehead, correct? Yes, there were. But there was also testimony from all of the witnesses that he had her, the defendant, by her hair, that he was trying to restrain her. K.C. Adesugba, I believe is her last name, she was just a third-party disinterested person who witnessed the event, not the beginning. And she saw Mr. Amarante with the defendant's hair, much shorter than him. She saw him testify that he pushed her down to the ground, that he pulled her back up by her hair, and that her arms were flailing about. Mr. Amarante's wife testified consistently to that as well. So he testified that during this altercation, that him having her by the hair has been consistent between the two of them, that she was able to reach under his sweater and grab this pen that she had no knowledge of. And if you look at Exhibit 2, his sweater was buttoned up. You can't even see his T-shirt or the pocket. So how she would know, one, there was a T-shirt pocket underneath his buttoned sweater, and that there was a pen in there, it's unbelievable.  Did he take the pen out of his sweater and did it to himself? Well, I don't know that a pen was even involved. He testified that his wife was attacked with this pen, and his wife said, that never happened. She never came at me with a pen. And his wife said, I never saw a pen. He testified he found part of this pen on the ground and he kicked it aside, and he didn't turn over the weapon to the police. I think that's incredible. And you have a written statement that omitted many details, and I briefed that. And you have an inconsistency between him and Officer Chapin, who said, I told him to take all the time he needed, I told him to ask me for more paper, and he said, I thought I only had the front page. With respect to Officer Chapin, when he arrived and spoke to the defendant initially, he said she was irate and still screaming obscenities. Correct, he did. How does that factor in? I mean, that's a factor. As opposed to telling the police officer I was attacked and calming down because the police are now arriving. She's still in a tirade. I think that it's certainly a factor that the jury considered the testimony that was presented. I think it's one factor, and I think different people may respond differently to an altercation like that. Obviously, she got out of her car, which is not something maybe a reasonable person would do to ask about the parking spot. I agree. You say yes, the jury may just have believed Mr. Amarante, and that from that point forward, he was justified in defending himself. That's possible. She inflicted injury on him. The jury believed, based upon the evidence, that she's the initial aggressor. Game over, right? Well, but I don't think they found that, and the reason I said that is because we have three counts of battery. Counts one and two for the same act. Count one for bodily harm. Count two for insulting and provoking contact. You're familiar with the term lenity, are you not? Yes, Your Honor. And you also know that legally inconsistent verdicts, that's no longer a basis to overturn a conviction. I'm not arguing a legally inconsistent verdict, and I think that's something the State argued in their brief, and there are two different issues. There's legally inconsistent verdicts, but there's logically inconsistent. My argument is, and it goes towards what Your Honor has asked me, if the jury simply believed Amarante's story over the defendant's, why wouldn't we have a guilty verdict on all three counts? Juries do that all the time. Believe me. But they're inconsistent. It happens all the time. It can be legally inconsistent, logically inconsistent. The jury is entitled to use lenity. And you're correct. Certainly. You're correct. It doesn't make a whole lot of sense if they're simply following the law and believe that if she's guilty of one battery, she's guilty on all three counts. Right. And certainly that's a possible reason for the different verdicts, but we don't know why they. . . Wasn't one for bodily harm? Bodily harm, and that was the one that was not guilty. Actually, you have pictures of injuries. One that was an insulting nature? I'm sorry? One that was an insulting nature? Correct. Count two was an insulting nature for the same act. So if I pushed you, I wouldn't necessarily harm you, but it could easily be deemed to be a battery by a jury, could it not? Absolutely. So how is this logically inconsistent? Because counts one and two are pled as of the same act, the striking and the scratching. It's the same act. One is causing bodily harm, one is insulting, provoking. I think here you have . . . You can finish. May I finish my answer? You have a situation where the injuries are actually clear. There was plenty for them to find bodily harm if they believed how this transpired. So that's why I believe that this wasn't lenity. This was them finding, we don't really believe him, but we have to do something. Your client is a licensed pharmacist, as she knows. She was. And if she was found guilty of bodily harm, would that not have a greater impact than a battery based upon an insulting nature? I don't believe so because the testimony at the sentencing hearing was that she was unable to continue with her license even with the insulting or provoking. The conviction on the battery alone caused her to be unable to renew her pharmacy license. So during the sentence, she can go back now and become a pharmacist under the law? She . . . Are you telling me right now that a simple battery conviction precludes her from being a pharmacist? I'm not sure that this . . . You can be a doctor, a lawyer. You can be all kinds of different things with a misdemeanor conviction for a simple battery. She very well may be able to now. At the time of sentencing, that wasn't the situation. With respect to sentencing, do you want to briefly summarize your sentencing argument? Yes, and Your Honor, just, you know, touched upon that. The trial court's analysis of sentencing, not only was she eligible for court supervision, and I'm not saying that she was . . . the court was mandated to give it to her, but I think you have a situation where the court didn't properly address the objective of restoring her to useful citizenship. This pharmacy license, she was a mother of one. She was pregnant. She was 37 years old with no criminal history, convicted of one count of misdemeanor battery, convicted of the lesser offense, not causing any bodily harm. I believe that she was a candidate for court supervision. I believe the court overlooked restoring her to useful citizenship, and you had plenty of testimony at the sentencing hearing, regarding how her career was affected, how she was financially harmed, and how she had to then take on government aid to support her family. So, all of those reasons favored giving her court supervision, where she would still be suffering consequences for her actions. And you understand that the trial court was entitled to look at the age of the victim? Yes. Where the incident took place? Yes, Your Honor. Actually, those two factors, the age of the victim and where the incident took place, could have elevated this to an aggravated battery? It could have, yes, Your Honor. All right, thank you. Thank you. You'll have time for rebuttal. Thank you. Mr. Kucenica. Good morning, Your Honors. My name is Randy Kucenica. I'll be arguing on behalf of the people. May it please the Court? Counsel. Generally speaking, Your Honor, the defendant is asking for per se rules with regards to her first and third argument. She's arguing that any time a victim of a battery has a battery conviction, it has to come in. There's no two ways about it. That's her argument. That the Court has no discretion on whether to exclude it or not. Would you agree with her that in Lynch there's no discussion of the prejudice versus the probative value? I would agree with her, Your Honor, but I believe that because the law changed at the time of Lynch. I believe it wasn't necessary to the Lynch analysis. Since Lynch came out, courts always talk about it in terms of an abusive discretion standard, which requires a probative value inquiry under 401, under the 400 rules. That's just the way it's done. It can't be that any battery comes in regardless of the circumstance. So your argument is that the 403 criteria come in in any type of evidence? Yes. Yes, Your Honor. And, pardon me, the analysis that the Court took in this particular circumstance was appropriate. There was no details regarding this battery. As Your Honor pointed out, it could have been for spitting at a police officer. It could have been for anything. Had it been a circumstance where this victim got in a fight in a parking lot over a parking spot 55 years ago and it resulted in his battery conviction, maybe the circumstances are different. But there were no details regarding this battery. It was 55 years old. He was a teenager when it occurred. The probative value is just nonexistent. And the other per se rule that the defendant is asking for is first-time offenders should always get supervision. The Court should not have discretion to impose a sentence, in this case a year of conditional discharge. That's the only way her argument could be construed, and that can't possibly be true. She's also arguing that it had a pretty devastating impact on her life because she could no longer work at least during a period of her sentence as a pharmacist, correct? You're right, Your Honor. And I believe you were right as well that the year of conditional discharge is over. She can go back to being a pharmacist under the law. That's spilt milk in terms of the defendant's argument, Your Honor. There's nothing that can be done about this now. But the victim was 74. This did occur in a parking lot. She didn't show remorse for it. She continued to blame the victim for it even after her conviction. Isn't a defendant entitled to continue to rely on the presumption of innocence and maintain his or her innocence throughout? I would say, sure, she could, but it's a factor to consider. Lack of remorse is a factor for the sentencing court to consider. And now we have a jury verdict finding her guilty of battery. I think the judge is entitled to defer to that with regards to the circumstances of the offense. And she showed no remorse for it. What about the photographs of the victim that showed pretty significant bruising? She didn't complain about it at the scene. Those photographs were taken away from her well after the event. I think he asked about the victim. Maybe I misunderstood. I assume you meant the defendant. I apologize, Your Honor. I assume you meant the defendant. There was an altercation in this parking lot. There was physical contact made between the victim and the defendant both ways. But according to the jury, the victim was defending himself. And during those circumstances, the defendant sustained injuries. He's still entitled to defend himself. I mean, the battery conviction for the defendant. I'm really at home to find areas to talk about here, Your Honor. You can sit down any time. Were you alive when the original battery? I was not. I was not. My sisters were not. My mom was. The evidence against the defendant in terms of her second argument, I've already touched on the first and third, is the victim's testimony mostly. As Your Honor pointed out, Justice Burkett, when the police arrived at the scene, the victim's crying, the defendant has to be restrained. That's further evidence of who the aggressor was here and who the victim was. It corroborates the victim's story, as does the victim's wife's testimony about the defendant attacking the victim. There's plenty of evidence here for the jury to rely on to support the verdict. Your Honor, I can't re-weigh the evidence. That's what the defense is asking you to do. I'd be happy to address any questions Your Honor has had in addition. What did the judge mean when he kept saying that the jury's findings or verdict was reasonable? He didn't say I agreed with him necessarily, did he? I believe it's a recognition of the circumstance that there was an altercation in this parking lot where the victim did have to defend himself and the defendant was the initial aggressor. It was mutual combat and combat because the defendant provoked it and the victim had to defend himself. My point is I don't think that the record reflects that the trial court made credibility findings so much as he made it or that the judge made a determination that the jury's findings and verdict were reasonable. Well, it was the jury that was entitled to render credibility determinations. So you're asking to get into the mind of the trial judge what he meant by it. My point is you don't often see a judge using terminology like the jury verdict is reasonable. They tend to say things like the jury's verdict was correct which implies that the trial judge is making an independent judgmental determination based upon his own experiences and observations in life and concurs in the verdict as opposed to saying as we do when we relate to measuring an abuse of discretion, we have on occasion said we wouldn't necessarily have done this but we can't disagree and say that this was so unreasonable that no reasonable person would agree with what was transpiring. I understand what you're saying now, Your Honor, and I would equate it to what this court does when it employs the common standard as Justice Burkett, you mentioned during opposing counsel's argument. There was evidence upon which the jury could render this verdict and that made it reasonable. There were conflicting stories, obviously. The victim had a story diametrically opposed to the other evidence and the defendant had a different story than the victims and physical evidence. So there was evidence on both sides. It was reasonable for the jury to believe the victim and I believe that could be what the trial court was saying when it made that comment. The defense points out that the jury's verdicts on the other two counts were inconsistent. Yes, Your Honor. And as you pointed out, legalese, inconsistent verdicts, no longer a means to attack a verdict. And the elements of the crimes were different. It was the crime that the defendant was found guilty of was provoking an insulting nature battery and not the bodily harm battery or the spitting battery. The jury was entitled to render that verdict because there was plenty of evidence of insulting and provoking contact here. Perhaps it didn't believe every strike that the victim spoke of. Perhaps it didn't believe certain aspects about his injuries, but there's no doubt that the jury believed that the defendant was the initial aggressor and did touch the victim in an insulting, provoking way. I mean, the jury's entitled to do that, as Your Honor said, when my opposing counsel was arguing. I'd be glad to answer any other questions Your Honors have. Going back to the Lynch evidence, in Lynch the Supreme Court said that a prior conviction, proof of prior conviction, is reasonably reliable evidence. So here there was proof of prior conviction, correct? There was. And the defense argues that that statement in Lynch is enough to render it a dismissal. Well, the jury argues it's a matter of law, not a piece of discretion. Right, and Lynch definitely didn't say that, and the codification of Lynch in the rules of evidence doesn't say that, that it comes in regardless of the circumstances and what evidence is to be propounded and how old it is. That's just not there. So in a vacuum, a victim's battery conviction is relevant. Had it been months before, like I believe the convictions in Lynch were closely closed in time. Well, it's propensity evidence, right? It is. And let's put the... It's normally not in the rules. Say, for example, we're looking at the defendant's propensity. For example, prior sexual activity with children convictions, Donahoe, 13 years. Right. Other cases, decades old. Why does age make that big of a difference when you're talking about propensity evidence? This is a character trait that this person still has. He's an aggressive person, as evidenced by his prior conviction for aggravated battery. Well... And the state can argue and the state can examine the victim regarding the circumstances and diminish any relevance. Lynch did speak of it in a nutshell, but as Justice McClaren pointed out, battery doesn't necessarily mean violent. It can mean anything. It can mean spitting. It can mean a nudge on a public way. If we had any details regarding this battery, perhaps a more detailed 403 analysis could have been rendered. But, again, Lynch doesn't say it. It comes in per se. It doesn't say that. The complication of Lynch in the 404 and 405 doesn't say it. So it's not the rule, and that's the rule that the defendant has to rely on in order to find error here. If there are no other questions, we'd ask Your Honor to affirm the defendant's conviction. Thank you. Please support. Your Honors, I just wanted to touch on a few things mentioned by counsel to clarify our position. Counsel argued that our position is that Lynch is a per se rule. We're certainly not arguing that. He argued that if there's a prior battery conviction, it comes in no matter what under Lynch. That's not what Lynch says. Lynch sets forth limitations, not the limitations that the state is arguing, that there should be a prejudicial versus probative value analysis, which is nowhere in the rules of evidence or in Lynch, but there is a requirement, a requirement that, one, self-defense be at issue and that there be actual evidence of self-defense, that only certain crimes, crimes of violence, are proper to invoke under Lynch, and that there be a proper purpose, those two purposes that I spoke of. So there is a requirement. There is a standard before this evidence comes in, and all of that applied in this case. One of his points is remoteness, and you don't disagree, do you, that the passage of time is relevant? I mean, the passage of time is relevant, and the more remote, the less relevant the evidence becomes? I don't disagree. The age of the conviction has a relevance. There is a factor there as far as relevance. I think that it's something that certainly the jury would know, and they can assess that. And under Lynch, in this case, we don't know whether it was a crime of violence. Well, Lynch says that a battery is, presumptively, a crime of violence. That's adjudicated by the Supreme Court. So I think that to say that it might not be goes against what our Supreme Court held in Lynch. And just to go with the argument about it being a per se rule, in fact, all of the cases cited by the state rejecting Lynch and the standard of review, they were cases where the courts found Lynch wasn't properly invoked. It wasn't that they weighed prohibitive versus prejudice and found it not to be admissible. In Yemen, a third district case, it was statements made in anger management counseling about a prior road rage evidence. There was no necessarily conviction there. And one of them, it was the incorrect prior crimes. In Crusado, it was disorderly conduct and unlawful possession of a firearm. The court found those are not necessarily crimes of violence, so Lynch is not properly invoked. So there is a standard that has to be followed in order for this evidence to come in, and all of those factors did come into play. And this court in People v. Gossett, a second district case, was cited by People v. Lynch, and this court expressed why this Lynch evidence can be so important. It's circumstantial evidence for the jury to consider. But what this court said was that when you have the defendant who is the only person testifying to a victim's prior... I'm sorry, to the victim being the aggressor, that the defendant has an interest in the verdict. And because they have an interest in the verdict, their credibility with the jury is at issue, of course. They have a stake in the game. So that's why it's so important to allow this type of evidence so that the defendant has a right to present evidence from a disinterested source, this prior conviction, something to corroborate her story. That's the purpose of the Lynch evidence, and I believe that's very important. That's what Martinez, the defendant in this case, was asking to do, corroborate her testimony and let the jury weigh it all, let the jury weigh it all and determine whether or not that 55-year-old conviction has any bearing on their verdict. Maybe it wouldn't have, but why not give her the opportunity to present her case in full? The other issue mentioned by the state was that the... and Your Honor brought it up, that the victim was crying when the police arrived and the defendant was angry and hostile. And I've already said people acted differently. But I think this also ties in that Lynch evidence. You have an alleged victim in a case who's admittedly in a physical altercation. Somebody is going to be deemed at fault here. He knows that. He's got a prior aggravated battery. Well, maybe that lends to his credibility as to how he's been here before. How should I act so that I'm not the one who's charged? The defendant never being in the situation wasn't thinking of how should I act. She was exerting her emotions as they were at the time. She had a right to be angry at what happened. If truly it happened the way she said she got out, she asked him about this parking spot and he attacked her. She was angry. He was crying. I mean, I think it's a reasonable reaction and I think the victim's prior conviction plays a role in why maybe he knew how to act when they arrived. The other argument by the state was that the defendant showed no remorse. And Your Honor touched upon that as well. And I think that this is a different scenario. This isn't a case where she says, I didn't do it. Victim says, I did it. We have self-defense. That changes it a little bit. She's not, the lack of remorse is, there's no lack of remorse because she's saying, I was just defending myself. She's maintaining that theory of self-defense. Thank you, Your Honors. And we'd ask that you reverse the conviction based on the issues presented. Thank you. As I mentioned, Justice Hudson will listen to the argument and rule that confiscation or written decision will be issued in due course. We thank both parties. Thank you.